RUSSELL, Judge.
Ahsan Mohiuddin filed for unemployment compensation benefits after he separated from employment with USBI Company in December 1988. USBI sought to deny benefits, alleging that it had terminated Mohiuddin’s employment after discovering that he had provided the company with a falsified medical excuse concerning a three-day absence from work in October 1988. Mohiuddin pursued his administrative remedies, and the Board of Appeals affirmed his disqualification from benefits.
Mohiuddin appealed to the circuit court, where a trial de novo was held. The trial court disqualified Mohiuddin from receiving benefits, finding that he was separated from employment for “a dishonest act committed in connection with his work” within the meaning of § 25-4-78(3)(a), Ala.Code 1975.
In a separate action, the Department of Industrial Relations moved for a summary judgment holding that Mohiuddin was subject to an administrative penalty for filing a fraudulent claim for unemployment benefits. Basing its judgment on attached affidavits and on its finding of facts in the first action, the trial court granted the Department’s motion.
Mohiuddin’s post-trial motions were denied. He appeals to this court from both judgments of the trial court. The two appeals have been consolidated. We affirm.
*927 Mohiuddin contends that the trial court erred in concluding that he was disqualified from receiving benefits based on his alleged misrepresentations to the company. He maintains that he has not committed a dishonest act in connection with his work and that his absence was for a legitimate medical reason. He also asserts that USBI violated its own policy by demanding that he provide a doctor’s statement regarding the three days he missed and that the company improperly coerced his resignation and falsely accused him of misconduct in an effort to reduce operating costs.
USBI and the Department of Industrial Relations deny that Mohiuddin’s employment was terminated in an improper manner or for insufficient cause. They dispute Mohiuddin’s claim that his absence was due to medical reasons, maintaining that his absence was due instead to a social and personal trip he made to California, where he formerly resided.
Mohiuddin became an employee of USBI in April 1988. The record indicates that in early October 1988, he notified his supervisor that he needed to take sick leave from work in order to travel to California for an eye operation. Mohiuddin was absent from work on October 3, 4, and 5, 1988. In November 1988, following additional absences, which Mohiuddin also attributed to medical reasons, the company requested that Mohiuddin provide medical documentation regarding his absences, including that from October 3 through 5. Mohiuddin subsequently provided the company with the name and phone number of Dr. Dan Saka-moto, indicating that Dr. Sakamoto had examined him in California on October 3, 1988. The company, which had become suspicious of Mohiuddin’s excuse, contacted Dr. Sakamoto’s office and was informed that the doctor had not seen Mohiuddin at any time in 1988. Upon determining that Mohiuddin had been dishonest regarding his reason for being absent from work, USBI sent him a letter notifying him that he was terminated effective December 8, 1988.
Under § 25-4-78(3)(a), Ala.Code 1975, an individual who is discharged from work for a dishonest act committed in connection with that work is disqualified from receiving unemployment compensation benefits. The courts of this state have construed the word “dishonest,” as it is applied under unemployment compensation law, to mean “ ‘characterized by lack of truth, honesty, probity or trustworthiness or by an inclination to mislead, lie, cheat or defraud.’ ” Scott v. Scott Paper Co., 280 Ala. 486, 487, 195 So.2d 540, 541 (1967) (quoting Webster’s Third New International Dictionary).
We note at the outset that when an unemployment compensation case is tried before a court sitting without a jury, the trial court’s findings are presumed correct unless shown to be clearly contrary to the great weight of the evidence. Davis v. Prestwood, 381 So.2d 85 (Ala.Civ.App.1985).
At trial Mohiuddin testified that he saw Dr. Sakamoto for an eye examination on October 3, 1988, as he had reported to USBI. Mohiuddin stated that he had been experiencing pain and irritation in one eye and that he had been warned by a physician in Alabama about the possibility that he had a detached retina. He claims that he visited Dr. Sakamoto, his treating ophthalmologist when he lived in California, for the purpose of receiving a second opinion. At trial Mohiuddin presented a friend who testified he had driven Mohiud-din to the vicinity of Dr. Sakamoto’s office during the time in question. However, the friend also indicated that the purpose of Mohiuddin’s visit to California was to see relatives and friends.
Dr. Sakamoto testified by deposition that he did not see Mohiuddin in October 1988. He further testified that he had mailed letters to USBI and the Department of Industrial Relations indicating that he last examined Mohiuddin on September 5, 1986. Records from Dr. Sakamoto’s office indicate that Mohiuddin was not seen on October 3, 1988. Also in evidence was a receipt that Mohiuddin had submitted to the Board of Appeals, saying that it was from Dr. Sakamoto’s office. The receipt had the date “October 3, 1988,” stamped on it; *928 however, USBI alleged that it had obviously been altered. Dr. Sakamoto’s records reflect that receipt No. 10624, the receipt that Mohiuddin represented as having been issued to him by Dr. Sakamoto on October 3, 1988, was actually issued on September 5, 1986.
Mohiuddin claims that USBI has offered specious reasons for his termination and that the company pursued a “nonexistent controversy” concerning his three-day absence for the sole purpose of reducing its expenses by firing him and denying his benefits. Specifically, he points out that USBI originally indicated in its records that he left his employment “voluntarily and without good cause,” but that when he appealed from the denial of his benefits, the company charged that he had been terminated because he had falsified his reasons for being absent.
However, there is substantial evidence that the reason ultimately given by USBI for Mohiuddin’s termination was not, as Mohiuddin claims, a post hoc justification. USBI’s personnel administrator testified at trial that he informed Mohiuddin in December 1988 that he was going to be discharged for lying and abusing the company’s sick leave policy, but that he gave Mohiuddin a choice of either being dismissed or resigning. Because Mohiuddin indicated that he did not want his record to reflect that he had been fired, the company recorded his departure as a resignation rather than a dismissal.
Mohiuddin also contends that because USBI’s written policy requires employees to furnish a medical excuse only after they have been absent for four or more consecutive days, he was not required to provide a doctor’s statement following his absence in October 1988. He maintains that the reasons for his absence are “[¡Immaterial to the nature of my work and the policies that govern my employment,” appearing to argue that even a falsified excuse regarding his three-day absence could not constitute “a dishonest act committed in connection with his work” within the meaning of § 25-4-78(3)(a).
Despite Mohiuddin’s arguments as to his obligation to provide medical documentation, we find that there is substantial evidence that he committed a dishonest act that was material to the nature of his work and the policies governing his employment. USBI’s personnel administrator testified that it is company policy that sick leave is properly used by employees only for reasons of illness or medical reasons and that employees are entitled to payment for earned sick leave only. Mohiuddin testified that USBI (before it became suspicious of his medical excuse) gave him sick-leave pay for two of the three days he missed in October 1988. (The personnel administrator, however, stated that Mohiuddin was actually compensated with sick-leave pay for only one of these days because he had taken the maximum number of sick days.) Mohiuddin further admitted that if he was not actually sick in October 1988, he would not have been entitled to sick-leave pay.
In its order the trial court found, inter alia, that:
“[T]he preponderance of the evidence clearly indicates the Claimant took off unauthorized time to make a trip to California for reasons that were social and personal. The evidence further shows that the Claimant submitted a falsified doctor’s statement to the employer in order to justify his absence. While there is some evidence that the Claimant was allowed to resign, instead of being fired, the Court determines the reason for his separation [from] employment was ... dishonesty.”
We find that the facts as stated by the trial' court show that there was sufficient evidence to classify Mohiuddin’s action as a dishonest act committed in connection with his work. The trial court was free to choose which evidence to believe, and it was the trial court’s duty to resolve the conflicts in the evidence. Gann & Lewis Roofing Co. v. Sokol, 359 So.2d 815 (Ala.Civ.App.1978).
Because we cannot say that the great weight of the evidence was contrary to the findings of the trial court, the judgment of the trial court is due to be affirmed.
*929 The trial court granted the Department of Industrial Relations’ motion for summary judgment in light of the fact that, in the first action, it had resolved issues of credibility raised in the Department’s motion. We do not find the trial court’s judgment to be in error and hold that following the court’s findings in the first case, no genuine issue of material fact remained. McMullin v. AmSouth Bank, 512 So.2d 1382 (Ala.Civ.App.1987).
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur.